UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUSTAVO BURMUDEZ, individually and on behalf of all similarly situated employees,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>DRAGADOS USA, INC., a Delaware corporation doing business in California; FLATIRON WEST, INC., a Delaware corporation doing business in California; DRAGADOS/FLATIRON JV, a joint venture doing business in California; and DOES 1 to 100, inclusive,<br><br>　　　　　Defendants. | CASE NO. 1:21-cv-00853-AWI-BAM<br><br>ORDER ON DEFENDANTS' MOTION TO COMPEL ARBITRATION<br><br>(Doc. No. 19) |

In this class action lawsuit, Gustavo Burmudez[1] is suing Dragados USA, Inc., Flatiron West, Inc., and Dragados/Flatiron JV, which he alleges are his former employers, for violations of California wage and hour and unfair competition laws. Defendants now move to compel arbitration. The Court will grant that motion and dismiss this case for the reasons that follow.

## BACKGROUND

Plaintiff filed his complaint in state court on January 7, 2021, and later filed a first-amended complaint on April 26, 2021. Doc. Nos. 19-3 & 19-4 ("FAC"). Defendants answered

---

[1] Across numerous filings, Defendants have indicated that Plaintiff's last name is correctly spelled "Bermudez," and that the use of "Burmudez" in the caption and pleadings is in error. Doc. No. 1 at 2 n.1; Doc. No. 12 at 1 n.1; Doc. No. 19-1 at 7 n.1. Documents filed with Defendants' instant motion suggest as much as well. See, e.g., Doc. No. 19-10 (union "referral notice"). For his part, Plaintiff does not appear to have responded to Defendants' consistent assertions, and the Court notes that Plaintiff's opposition to Defendants' motion uses "Burmudez."

the latter after removing the action.  Doc. Nos. 1 & 12.

In the first-amended complaint, Plaintiff alleges that he worked as a non-exempt employee of Defendants on various construction projects in California from approximately July 2018 through August 2020.  FAC, ¶¶ 13, 15–16.  Plaintiff seeks to represent a class of similarly situated non-exempt employees for eight claims:  (1) failure to provide meal periods or compensation in lieu thereof, in violation of California Labor Code §§ 512 and 226.7, and California Industrial Welfare Commission Wage Order 16-2001 ("Wage Order 16") (¶¶ 30–34); (2) failure to provide rest periods or compensation in lieu thereof, in violation of Labor Code § 226.7 and Wage Order 16 (¶¶ 35–39); (3) failure to pay separation wages, in violation of Labor Code §§ 201–203 (¶¶ 40–45); (4) failure to provide accurate wage statements, in violation of Labor Code § 226 (¶¶ 46–50); (5) failure to reimburse for employment-related expenses, in violation of Labor Code § 2802 (¶¶ 51–55); (6) violations of California's unfair competition law, Cal. Bus. & Profs. Code § 17200 et seq. (¶¶ 56–60); (7) failure to pay straight-time and minimum wages, in violation of Labor Code § 1194 (¶¶ 61–65); and (8) entitlement to civil penalties under California's Private Attorney General Act ("PAGA"), Cal. Lab. Code § 2698 et seq. (¶¶ 66–74).

Defendants filed their motion to compel arbitration on August 31, 2021.  Doc. No. 19.  Plaintiff filed an opposition, and Defendants submitted a reply.  Doc. Nos. 20 & 21.

## LEGAL STANDARD

The Federal Arbitration Act makes actionable a written arbitration provision in "a contract evidencing a transaction involving commerce."  9 U.S.C. § 2; Chiron Corp. v. Ortho Diagnostics Sys., 207 F.3d 1126, 1130 (9th Cir. 2000).  It also authorizes a party aggrieved by the alleged failure to arbitrate under such an agreement to seek a federal court order compelling arbitration.  9 U.S.C. § 4; Chiron Corp., 207 F.3d at 1130.  The court's role in resolving such matters is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."  Chiron Corp., 207 F.3d at 1130.  When both questions are answered in the affirmative, the court must enforce the arbitration agreement in accordance with its terms.  Id.

To resolve a motion to compel arbitration, the court follows the procedures set forth under the Federal Arbitration Act. This first requires the court to "hear the parties." 9 U.S.C. § 4. If upon doing so the court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." Id. On the other hand, "[i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof." Id. Courts rely on the summary judgment standard of Federal Rule of Civil Procedure 56 in applying this language. Hansen v. LMB Mortg. Servs., Inc., 1 F.4th 667, 670 (9th Cir. 2021).

## DISCUSSION

Defendants' motion is not complex. They contend that a collective bargaining agreement governed the relevant terms of Plaintiff's employment and set forth grievance procedures that culminated in mandatory arbitration. According to Defendants, Plaintiff failed to comply with those procedures before filing this lawsuit. Defendants now seek an order compelling such compliance. Plaintiff, on the other hand, disputes the existence of a valid arbitration agreement, as well as any application of the provisions set forth in collective bargaining agreement in this context.

**A.    Arbitration agreement**

The arbitration provision at the heart of this dispute is found in the "Master Agreement" that the Northern California District Council of Laborers executed with employer associations on behalf of its members for 2018 to 2023. Doc. No. 19-11 ("De La Torre Decl."), ¶ 2; Doc. No. 19-12 ("Master Agreement"). Relevant here, Section 9 of the Master Agreement sets forth procedures for resolving employment-related grievances and disputes. Master Agreement, § 9(1). As dictated by these procedures, if a grievance or dispute cannot be satisfactorily resolved at the job-site level between the local union and individual employer, it may be submitted by either party to a board of adjustment composed of two members named by the union, two members named by

3

the employer association, and an impartial arbitrator. Id., § 9(1)–(4). The impartial arbitrator is to participate and render a final and binding decision whenever the board is unable to reach a majority vote. Id., § 9(4). In its final provision, Section 9 states:

> In addition to disputes concerning the interpretation or application of this Agreement, all claims and claims for associated penalties arising under the federal Fair Labor Standards Act, the California Labor Code, and Wage Order 16, will be resolved through the procedures set forth in this Section 9; such claims may not be brought in a court of law or before any administrative agency such as the California Labor Commissioner.

Id., § 9(20).

The Master Agreement was later supplemented by a memorandum of understanding, which in part confirmed that "the provisions in Section 9 (Grievance Procedure) of the Master Labor Agreement requir[e] that all claims arising under the Fair Labor Standards Act, the California Labor Code or Wage Order 16 be processed through the grievance and arbitration procedure and not in a court of law or administrative proceeding." De La Torre Decl., ¶ 3; Doc. No. 19-13 at 14–15. The Master Agreement was then again supplemented by a second memorandum of understanding that added language to Section 9 regarding PAGA claims, including the following: "Such claims shall be resolved exclusively through the procedures set forth in this Section 9 and shall not be brought in a court of law or before any administrative agency such as the California Labor Commissioner." De La Torre Decl., ¶ 4; Doc. Nos. 14 & 15.

Using evidence submitted with their motion, Defendants connect Plaintiff to Section 9 of the Master Agreement in two ways.

The first connection is straightforward. Plaintiff was employed by Dragados/Flatiron JV from August 15, 2018, through August 31, 2020, to work on a high-speed rail construction project for the California High-Speed Rail Authority. Doc. No. 19-6 ("Alberola Decl."), ¶ 1; Doc. No. 19-9 ("Stevens Decl."), ¶¶ 2, 4.[2] His employment commenced when he was dispatched to

---

[2] Plaintiff objects to the Alberola and Stevens declarations, both of which were submitted by Defendants in support of their motion. Doc. Nos. 20-1 & 20-2. The Court finds Plaintiff's general objections—a collection of nonspecific boilerplate assertions—are without merit, and notes its only use of information to which Plaintiff has specifically objected is the same end date of Plaintiff's employment (August 31, 2020) that is found in the first-amended complaint. FAC, ¶ 15.

1  Dragados/Flatiron JV through the Laborers' Local 294, of which he was a member. Id., ¶ 2. At
2  that time, the union sent Dragados/Flatiron JV a "referral notice" that conditioned Plaintiff's
3  employment on Dragados/Flatiron JV's agreement to be bound by "all the wages, hours, and all
4  other terms and conditions" of the Master Agreement. Id., ¶¶ 2–3; Doc. No. 19-10 ("Referral
5  Notice").

6        The second connection involves a couple more steps. As noted above, Plaintiff was
7  employed for work on a high-speed rail construction project. Prior to starting a Central Valley
8  portion, the High-Speed Rail Authority executed a "Community Benefits Agreement" that applied
9  to all construction work on the project. Alberola Decl., ¶ 5; Doc. No. 19-7 ("Community Benefits
10 Agreement"), §§ 1.18, 2.2. By its terms, contractors and employers were required to assent to the
11 terms and conditions of the Community Benefits Agreement to perform work on the project.
12 Community Benefits Agreement, § 3.3. As to those terms and conditions, the Community
13 Benefits Agreement expressly incorporated the local collective bargaining agreements of signatory
14 unions having jurisdiction over the work on the project. Id., § 2.3. While the terms of the
15 incorporated collective bargaining agreements were to defer to those of the Community Benefits
16 Agreement when conflicts arose, the Community Benefits Agreement itself expressly deferred
17 matters of wages and benefits to the incorporated collective bargaining agreements. Id., § 8.1.
18 The Northern California District Council of Laborers was amongst those unions that signed the
19 Community Benefits Agreement. Id., Attach. A, p. 58. Meanwhile, Dragados/Flatiron JV signed
20 a letter of assent to be bound by the Community Benefits Agreement, and thus its incorporated
21 collective bargaining agreements. Doc. No. 19-8.[3]

22       Collectively, the evidence Defendants have produced to establish these contractual
23 connections demonstrates that the terms of the Master Agreement applied to Plaintiff's
24 employment relationship, and that those terms include an agreement to arbitrate certain claims.[4]
25

26 [3] Defendants request for judicial notice of the existence and authenticity of the Community Benefits Agreement and Dragados/Flatiron JV's letter of assent. Doc. No. 19-16. The Court grants this request as both documents are
27 maintained on government websites. Rollins v. Dignity Health, 338 F.Supp.3d 1025, 1032–33 (N.D. Cal. 2018).

28 [4] The Court notes here that Plaintiff does not contest Defendants' joint effort to invoke arbitration despite acknowledging that two of them (Dragados USA, Inc., and Flatiron West, Inc.) are not a party to the underlying

5

In rendering that conclusion, the Court is unmoved by Plaintiff's challenges to the validity of this arbitration agreement on unconscionability grounds. California law applies here. Circuit City Stores, Inc. v. Adams, 279 F.3d 889, 892 (9th Cir. 2002). "Under California law, a contract is unenforceable if it is both procedurally and substantively unconscionable." Id. (citing Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal. 4th 83, 114 (2000)). Procedural unconscionability is based on the equilibrium of bargaining power between the parties and the extent to which the contract clearly discloses its terms. Id. (citing Stirlen v. Supercuts, Inc., 51 Cal. App. 4th 1519, 1532 (1997)). Substantive unconscionability turns on whether the terms of the contract are unduly harsh or oppressive. Id. (citing Stirlen, 51 Cal. App. 4th at 1532).

As to procedural unconscionability, Plaintiff conclusory describes the arbitration provision in the Master Agreement as a contract of adhesion. He then asserts that the provision is substantively unconscionable based on a term that allows for the parties' replacement of the impartial arbitrator: "The parties shall select and utilize one (1) permanent impartial arbitrator who is willing to abide by the procedures set forth herein. *The impartial arbitrator may be changed or replaced at the request of either party*." Master Agreement, § 9(5)(d) (emphasis added).

Plaintiff does not cite a single source of legal authority across all of this. While not fatal, it

---

arbitration agreement. While uncontested, the Court finds in Defendants' favor on this point in light of the argument made.

"Generally, parties who have not assented to an arbitration agreement cannot be compelled to arbitrate under its terms." Franklin v. Cmty. Reg'l Med. Ctr., 998 F.3d 867, 870 (9th Cir. 2021) (quoted source omitted). Exceptions to this rule exist, however, if state contract law allows a nonsignatory litigant to enforce an arbitration agreement. Id. Under California law, a nonsignatory defendant can use the doctrine of equitable estoppel to "invoke an arbitration clause to compel a signatory plaintiff to arbitrate its claim when the causes of action against the nonsignatory are 'intimately founded in and intertwined with' the underlying contract obligations." Garcia v. Pexco, LLC, 11 Cal. App. 5th 782, 786 (2017) (quoted source omitted). "The doctrine applies where the claims are 'based on the same facts and are inherently inseparable' from the arbitrable claims against signatory defendants." Id. (quoted source and internal marks omitted). California law also recognizes an agency exception to the general rule that only parties to an arbitration agreement may enforce it. Id. at 788. A defendant can rely on this exception "when a plaintiff alleges a defendant acted as an agent of a party to an arbitration agreement." Id. (quoted source omitted).

The Court finds the facts and relevant allegations here are analogous to those in Garcia, wherein the court determined the estoppel and agency exceptions applied. Id. at 787–88. To start, Plaintiff alleges that "each of the Defendants was the agent or employee or the other Defendants and acted in the scope of agency or employment." FAC, ¶ 10. Far from boilerplate, this allegation is supported by Plaintiff's use of shared factual allegations to set forth identical claims against all three Defendants. Id., ¶¶ 15–25, 28–29, 30–74. Beyond agency, the complaint also clearly shows a ready foundation for estoppel, as Plaintiff's claims against Defendants as joint employers are based on an employment relationship that is governed by the same employment contract that bears the relevant arbitration agreement.

6

is revealing. For one, there is great reason to doubt whether a collective bargaining agreement in general can ever be considered a contract of adhesion under California law. See Dryer v. L.A. Rams, 40 Cal. 3d 406, 415 n.9 (1985); see also Rehmar v. Smith, 555 F.2d 1362, 1368–69 (9th Cir. 1976) (noting that parties to a collective bargaining agreement are generally treated as parties of equal strength). But even excusing that half of the analysis, California courts have determined that providing for arbitration panels with equal representatives and a tie-breaking "neutral arbitrator" is not substantively unconscionable. See, e.g., Painters Dist. Council No. 33 v. Moen, 128 Cal. App. 3d 1032, 1036, 1041 (Ct. App. 1982); Tipton v. Systron Donner Corp., 99 Cal. App. 3d 501, 505–06 (Ct. App. 1979). The fact that this particular arbitration provision further substantiates impartiality in the arbitration process by providing the parties with the ability to unilaterally replace the jointly selected impartial arbitrator only supports that same conclusion applying here. In sum, Plaintiff has not shown that the arbitration provision in the Master Agreement is unconscionable.

**B.    Plaintiff's claims**

The next question is whether Plaintiff's claims fall within the scope of the arbitration agreement identified above.[5] Broadly, at this stage, the Court looks to "general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." Boardman v. Pac. Seafood Grp., 822 F.3d 1011, 1018 (9th Cir. 2016) (quoted source and internal mark omitted). Supreme Court precedent indicates that, as part of the collective bargaining process, a union may agree on its members' behalf to require arbitration of employment-related disputes. 14 Penn Plaza LLC v. Pyett, 556 U.S. 247, 256–57 (2009). But in so far as those agreements relate to statutory claims, there must exist a "clear and unmistakable" waiver of the

---

[5] The Court agrees with Defendants' unopposed contention that this arbitration agreement "involve[es] commerce," as is required for the Federal Arbitration Act to apply. 9 U.S.C. § 2. Namely, unrefuted evidence shows that as part of the high-speed rail construction project for which Plaintiff was employed Dragados/Flatiron JV engaged in interstate operations, including the purchase of construction products for incorporation into the project's infrastructure. Alberola Decl., ¶ 4.

7

right to a judicial forum. Wright v. Universal Mar. Serv. Corp., 525 U.S. 70, 80–82 (1998).

As set forth above, Section 9 of the Master Agreement expressly states that "all claims and claims for associated penalties arising under the federal Fair Labor Standards Act, the California Labor Code, and Wage Order 16 will be resolved through the procedures set forth in this Section 9; such claims may not be brought in a court of law or before any administrative agency such as the California Labor Commissioner." Master Agreement, § 9(20). The scope of this coverage was later confirmed by two memoranda of understanding. Doc. No. 19 at 14–15; Doc. No. 14 at 2; Doc. No. 15 at 2. With two exceptions, Plaintiff's claims fit squarely within the language of this arbitration agreement as they exclusively seek recovery under the Labor Code for violations of the Labor Code and Wage Order 16. FAC, ¶¶ 16, 34, 36, 38, 44–45, 48, 50, 52, 55, 62, 65.

The first exception is Plaintiff's unfair competition law claim. Although arising under the California Business and Professions Code, this claim is wholly derivative of Plaintiff's allegations regarding violations of the Labor Code and Wage Order 16. FAC, ¶¶ 56–58. In other words, it too falls clearly and unmistakably within the scope of the arbitration agreement. See Cortez v. Doty Bros. Equip. Co., 15 Cal. App. 5th 1, 14–15 (2017).

As to the aforementioned claims, Plaintiff's contentions that the language of the Master Agreement does not constitute a clear and unmistakable waiver because it does not specify particular Labor Code or Wage Order provisions (or otherwise match the particularities of his allegations) is belied by analogous California case law. See, e.g., Cortez, 15 Cal. App. 5th at 14–15; Lane v. Francis Cap. Mgmt. LLC, 224 Cal. App. 4th 676, 684–86 (2014). Plaintiff's other contentions—that he is not seeking to interpret or apply any terms of the Master Agreement, and that the arbitration agreement does not confer jurisdiction to consider his statute-based claims—completely ignore the language of the Master Agreement that states "all claims and claims for associated penalties arising under the federal Fair Labor Standards Act, the California Labor Code, and Wage Order 16, will be resolved through the procedures set forth in this Section 9; such claims may not be brought in a court of law . . . ." Master Agreement, § 9(20).

The second exception is Plaintiff's PAGA claim. This claim too is wholly derivative and also made solely for penalties arising under the California Labor Code. FAC, ¶¶ 66–74. It thus

8

falls under the language of the arbitration agreement.

Against this outcome, Plaintiff contends that PAGA claims cannot be compelled to arbitration under California law. While the law at issue is slightly muddled, this categorical statement is not correct. The California Supreme Court has held that employment agreements to waive PAGA claims are unenforceable under California law. Iskanian v. CLS Transp. L.A., LLC, 59 Cal. 4th 348, 383–84 (2014). And the Ninth Circuit has explained that this Iskanian rule is not preempted by the Federal Arbitration Act. Sakkab v. Luxottica Retail N. Am., Inc., 803 F.3d 425, 431 (9th Cir. 2015). But the Ninth Circuit has also explained that "Iskanian does not require that a PAGA claim be pursued in the judicial forum; it holds only that a complete waiver of the right to bring a PAGA claim is invalid." Valdez v. Terminix Int'l Co. Ltd. P'ship, 681 F. App'x 592, 594 (9th Cir. 2017); see also Wulfe v. Valero Ref. Co.-Cal., 641 F. App'x 758, 760 (9th Cir. 2016) ("The district court did not err in compelling arbitration of Wulfe's [PAGA] claim."). As noted in Valdez, the Ninth Circuit in Sakkab "recognized that individual employees may pursue PAGA claims in arbitration." 681 F. App'x at 594 (citing Sakkab, 803 F.3d at 436, 438). Another California district court further examined that recognition in light of contradicting decisions from the California Court of Appeal, and ended up concluding that "the entire basis of Sakkab's determination that Iskanian does not run afoul of the [Federal Arbitration Act] would be eviscerated by" ruling that parties cannot agree to arbitrate PAGA claims. Schwendeman v. Health Carousel, LLC, No. 18-cv-07641-BLF, 2019 WL 6173163, at *7–9 (N.D. Cal. Nov. 20, 2019); see also Cervantes v. Voortman Cookies Ltd., No. 3:19-cv-00700-H-BGS, 2019 WL 3413419, at *5 (S.D. Cal. July 29, 2019); Cabrera v. CVS Rx Servs., Inc., No. C 17-05803 WHA, 2018 WL 1367323, at *5 (N.D. Cal. Mar. 16, 2018). In sum, the Court will follow this on-point federal case law to reject Plaintiff's argument.[6]

---

[6] Defendants' push to arbitrate Plaintiff's PAGA claim rests in part on California Labor Code § 2699.6. This statute provides a narrow exception to the Iskanian rule whereby "an employee in the construction industry" can waive a PAGA claim through a valid collective bargaining agreement that meets certain requirements. It thus effectively functions as an affirmative defense to an asserted PAGA claim. In addition, based on the parties' briefing, it is clear that the existence of such a waiver in this case is predicated on "disputes concerning the interpretation or application of" the Master Agreement. For both of these reasons, determinations on any possible application of § 2699.6 in this case is beyond the Court's narrow task here. Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 720 (9th Cir. 1999); Republic of Nicaragua v. Standard Fruit Co., 937 F.2d 469, 478 (9th Cir. 1991).

9

**C.     Conclusion**

Because the Court finds a valid arbitration agreement exists that covers Plaintiff's claims, it must order arbitration. Chiron, 207 F.3d at 1130. Moreover, arbitration shall proceed individually, as the arbitration agreement does not contain an affirmative showing that the parties consented to class arbitration. Lamps Plus, Inc. v. Varela, 139 S. Ct. 1407, 1416–17 (2019). While Plaintiff points out that the arbitration agreement also does not include a class arbitration waiver, silence in this instance is not enough. Id. Finally, because all of Plaintiff's claims will be sent to arbitration, the Court will exercise its discretion and dismiss this case. Johnmohammadi v. Bloomingdale's, Inc., 755 F.3d 1072, 1074 (9th Cir. 2014); Orozco v. Gruma Corp., No. 1:20-cv-1290-AWI-EPG, 2021 WL 4481061, at *9 (E.D. Cal. Sept. 30, 2021).

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' motion to compel arbitration (Doc. No. 19) is GRANTED;
2. The parties shall submit all claims pending in this matter to arbitration in accordance with the arbitration agreement discussed in this order;
3. This case is DISMISSED; and
4. The Clerk of the Court shall CLOSE this case.

IT IS SO ORDERED.

Dated:   November 18, 2021                              _____
                                                                       SENIOR DISTRICT JUDGE